DECISION.
{¶ 1} Defendant-appellant Eugene Beamon was found guilty by a jury of trafficking in cocaine.[1] The trial court sentenced Beamon to six months in prison. We affirm.
 {¶ 2} Cincinnati Police Officer Kathleen Harrell testified that, in May 2004, she was working undercover in Evanston, a neighborhood that had been receiving many citizen complaints about drug dealing. Typically while working undercover, Harrell would buy drugs for several weeks from different drug dealers. Then, after she and other police officers had identified numerous drug dealers, the police would sweep the neighborhood and make many arrests at once.
 {¶ 3} On May 25, 2004, Harrell was working undercover and driving down Clarion Street. A young man approached Harrell's car and asked her what she needed. Harrell explained to the jury that the young man was a "geeker," or middleman — someone who helped to bring a drug buyer to a drug seller. Harrell testified that the geeker was wearing a gold t-shirt and tan shorts.
 {¶ 4} The geeker told Harrell to meet him on the next street over, which was Brewster. Officer Richard Dews, who was also working undercover, was already parked on Brewster, knowing that previous drug deals had been made on that street.
 {¶ 5} Harrell drove her car around the corner to Brewster, where she saw the geeker talking to an individual she later identified as Beamon. Harrell parked her car on the opposite side of the street from the geeker and Beamon, about 20 feet away from them.
 {¶ 6} Harrell testified that, as the geeker talked to Beamon, the geeker turned and pointed at Harrell. Beamon looked at Harrell and then walked over to a windowsill. On the windowsill was a plastic bag. Beamon brought the plastic bag over to the geeker, took out a piece of what was later identified as crack cocaine, and handed the crack to the geeker, who then immediately handed it to Harrell. Harrell handed $20 in cash to the geeker, who then took the cash right to Beamon. Beamon then placed the plastic bag back on the windowsill.
 {¶ 7} Harrell drove away with the drugs. She testified that she wore a body wire and had her cellular phone line open to Officer Dews through the entire incident. As she drove away, she repeated Beamon's description to Dews.
 {¶ 8} Officer Dews next testified, explaining that he often conducted surveillance in neighborhoods where other officers were working undercover. He stated that he was in plainclothes and in an unmarked car on Brewster.
 {¶ 9} Officer Dews knew Beamon from previous encounters with him. Dews described to the jury what he observed that day while watching the street through his binoculars. Beamon was standing on Brewster when an individual wearing a gold t-shirt and khaki shorts ran onto the street and walked up to Beamon. Officer Harrell then drove down Brewster. The man in the gold t-shirt motioned for her to park her car on the opposite side of the street from Beamon. Dews saw Beamon go to the windowsill and get something, and then return to the man in the t-shirt. The man in the t-shirt then crossed the street to Harrell and handed her something, and she handed something back to him. Beamon then put something back on the windowsill. Dews then saw Harrell drive away.
 {¶ 10} Beamon testified in his own defense. He denied that he had sold cocaine to Officer Harrell, though he did admit that he had sometimes visited with friends on Brewster.
 {¶ 11} In his single assignment of error, Beamon argues that his conviction was against the manifest weight of the evidence. A challenge to the weight of the evidence attacks the credibility of the evidence presented.[2] When evaluating a claim that a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[3] The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[4]
 {¶ 12} Officer Harrell testified that the geeker asked her what she needed and then ran directly to Beamon. Harrell saw Beamon remove something from a plastic bag, which was later identified as crack cocaine, and hand it to the geeker. The geeker then handed it to her. Harrell gave the geeker $20 in cash, and the geeker gave the money directly to Beamon. Officer Dews testified that he saw essentially the same transaction occur while watching all the parties through binoculars. In opposition, Beamon offered no explanation other than denying that he had sold cocaine to Officer Harrell.
 {¶ 13} It was for the jury to weigh the credibility of each of the witnesses. We fail to see that the jury lost its way. Beamon's conviction for trafficking in cocaine was not against the manifest weight of the evidence. Therefore, we overrule Beamon's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2925.03(A)(1).
[2] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.
[3] See id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[4] See State v. Martin, supra.